### 5. Intentional Infliction of Emotional Distress

Under Connecticut law, to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of defendant's conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was the cause of plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe. See <u>Appleton v. Bd. Of Educ. Of Town of Stonington</u>, 254 Conn. 205, 210 (2000). Extreme and outrageous conduct is defined as that which "exceeds all bounds usually tolerated by decent society." <u>Appleton</u>, 254 Conn. at 210 (quoting <u>Peytan v. Ellis</u>, 200 Conn. 243, 254 n. 5 (1986).

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member

### 6. Defendants Acted Jointly and in Concert with Each Other

A joint adventure, or enterprise exists where there is a joint prosecution or common purpose under such circumstances that each participant has authority, express or implied, to act for all in the control of the instrumentalities employed to execute such common purpose. There must be a community of interests in the objects or purposes of the undertaking, and an equal right to govern the movements and conduct of each other with respect thereto; each must have the voice and right to be heard in its control or management.

> Source: <u>Connecticut Jury Instructions Civil</u>, Volume One, Wright and Ankerman, Fourth Edition, Section 33.

### 7. Damages

A plaintiff who wins nominal damages under 42 U.S.C. Section 1983 is a prevailing party as that term is used in the corresponding remedial statute 42 U.S.C. Section 1988. When that party recovers only nominal damages because of the failure to prove "an essential element of his claim for monetary relief the only reasonable fee is no fee at all."

Source:  *Farrar v. Hobby*, 506 U.S. 103, 113, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992).

### 8. The Qualified Immunity Doctrine

Title 42 U.S.C. Section 1983 provides:

> Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

18 U.S.C. Section 1983 does not provide any substantive rights but it was enacted ". . . only to ensure that an individual had a cause of action for violations of the Constitution . . .". *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979). The purpose of the statute is to deter public officials from abusing their authority and to compensate persons for injuries caused by the deprivation of their constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 255 (1978).

There are two types of immunity: absolute and qualified.

On its face the statute does not provide immunity for any person. The United States Supreme Court has held, however, that common law immunities based on historical public policy considerations apply to Section 1983 suits against state officials.

Absolute Immunity: The Court has held that absolute immunity or "complete protection from suit" typically exists for judges performing judicial functions. *See e.g., Stump v. Sparkman*, 435 U.S. 349 (1978).

In this case Officer Chapman and Officer Froschino's roles in setting bail as to the Plaintiff, William Clynch, were functionally comparable to that of judge. *See Butz v. Economov*, 438 U.S. 478, 511 (1978). For that reason,

you should note that the Court has previously ruled that the Defendants, Chapman and Froschino are entitled to absolute immunity regarding their decisions to set and release the Plaintiff, William Clynch, on bail.

Qualified Immunity: If you find by a preponderance of the evidence that the Defendant, Officer Steve Chapman did not have probable cause to believe that the Plaintiff, William Clynch, was committing a misdemeanor traffic offense that does not end your inquiry, you may determine through special interrogatories that the Defendants, Steve Chapman and James Garofalo, may be entitled to qualified immunity. See generally, Lamont Warrant v. Joseph L. Dwyer, 906 F.2d 70 (2nd Cir.).

If the vehicle stop was made without probable cause, then you may not impose liability if a reasonable officer in Officer Chapman's position would have found that probable cause did exist that William Clynch had committed or was committing a misdemeanor motor vehicle violation for which reason he was arrested. Id.

As stated, in this case you need to decide the unresolved factual issues related to this qualified immunity issue on the basis of special interrogatories. The ultimate legal determination whether on the facts found a

reasonable officer should have known he acted unlawfully is a question of law for the Court (the judge) to decide. You will decide the underlying facts by way of written interrogatories as a separate document as follows:

(1) Was the Plaintiff, William Clynch's conduct from the time he exited Franco's Restaurant and entered his automobile to the time he was pulled over by Officer Chapman sufficient to justify a reasonable person in believing that there was reasonable ground for stopping his vehicle; and if not:

(2) Under these same circumstances described above, would a reasonable police officer have found that probable cause did exist that the Plaintiff, William Clynch, had committed or was committing those motor vehicle violations for which he was arrested.

*Mitchell v. Forsyth*, 472 U.S. at 528, 105 S.Ct. at 2816-7 (1985); *Andersen v. Creighton*, 483 U.S. at 641, 107 S.Ct. at 3039; *Mally v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097 (1986); *Melear v. Spears*, 862 F.2d 1177, 1187-88 (5th Cir. 1989) (suggesting use of special interrogatories).

### 9. Causation/Proximate Cause

Even if you find a Defendant was reckless or acted intentionally or otherwise liable, in order for the Plaintiff, William Clynch to recover, the Plaintiff must further prove, by a fair preponderance of the evidence, that the acts of each specific Defendant proximately caused the Plaintiff's injuries. The test of legal, or so-called "proximate" cause is as follows: Was the act a <u>substantial factor</u> in producing those injuries? When an event produces a result in natural sequence which proceeds in accordance with the common experiences of life.

In order to prevail against the Defendants, although the Plaintiff does not have to prove that the specific Defendant's reckless or intentional act was the exclusive factor in causing the Plaintiff's injuries, the law does require that the Plaintiff show that each Defendant's act was a substantial factor, which acting alone or in conjunction with other factors brought about the Plaintiff's injuries.

Recall that this determination of proximate cause is different than the determination of duty which was previously discussed. While foreseeability or anticipation of harm was an aspect of the creation of a duty in the first place,

reasonable anticipation is not the basis upon which proximate cause is determined.

The question of proximate cause is answered by looking backward in time from the date of the injury to see what factors substantially produced the injury. However, whether or not each Defendant deviated form the standard of care, thereby breaching a duty owed to the Plaintiff, cannot be viewed in hindsight or in retrospect.

In proving causation, as in proving any other fact, you are only entitled to draw all reasonable and logical inferences from facts which you find to be proven. *Wright, Subsection 224, 225 14(a); Wright and Fitzgerald, <u>Connecticut Law of Torts</u>, 2nd Ed. Sec. 33; <u>Monroe v. Hartford St. Rv. So.</u>, 76 Conn. 201 (1903); <u>Lombardi v. Wallad</u>, 98 Conn. 510 (1923); <u>Mahaney v. Beatman</u>, 110 Conn. 194 (1929); <u>Santini v. Levin</u>, 110 Conn. 248 (1920); <u>Corey v. Phillips</u>, 126 Conn. 62 (1941); <u>Maurison v. Hanson</u>, 128 Conn. 62 (1941); <u>State v. Avcollie</u>, 178 Conn. 450 (1979).*

In order for the Plaintiff, William Clynch to recover, you must not only find that the individual Defendant was reckless or acted intentionally in at least one of the allegations set forth in the Complaint, but you must also find

that the act of the individual Defendant was the proximate cause of the injuries to the Plaintiff.

*Vinchiarello v. Kathuria*, 18 Conn.App. 377, 558 A.2d, 262 (1989).

If the Plaintiff does no more than set up a possibility that the individual Defendant's actions may have resulted in harm to himself specifically, he has not established his claim by a fair preponderance of the evidence. Causation must be removed from the realm of speculation.

*Green v. Stone*, 119 Conn. 30-0, 306 (1934).

## 10. Connecticut General Statutes Section 14-227a(a)(1)

(a) Under Connecticut General Statutes Section 14-227a(a)(1), under which the Plaintiff, William Clynch was charged, is considered the behavioral subdivision of Connecticut General Statutes Section 14-227a(a). *State v. Barber*, 42 Conn.App. 589, 590 (1996). Under that subdivision no evidence of blood alcohol content is necessary to support a conviction. *See e.g., State v. Gonzalez*, 210 Conn. 446 (1989); *State v. Pulaski*, 71 Conn.App. 497, 501-505 (2002).

(b) Thus, a DUI conviction may be predicated on a driver's behavior even if the driver's blood alcohol content rating falls below ten-hundredths of a percent. *See Memorandum of Decision by Judge Arterton [Doc #18] dated September 30, 2003 at page 26.*